United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OFFICERS FOR JUSTICE, et al,<br><br>　　　　Plaintiffs,<br><br>　v.<br><br>CIVIL SERVICE COMMISSION OF THE CITY AND COUNTY OF SAN FRANCISCO, et al.,<br><br>　　　　Defendants.<br>_____/<br><br>SAN FRANCISCO POLICE OFFICERS' ASSOCIATION,<br><br>　　　　Intervenor.<br>_____/<br><br>UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>CITY AND COUNTY OF SAN FRANCISCO,<br><br>　　　　Defendant.<br>_____/ | No. C 73-0657 CRB<br>　　　C 77-2884 CRB<br><br>**MEMORANDUM AND ORDER** |

The pending motions arise from the San Francisco Police Department's decision to eliminate the Q-35 Assistant Inspector rank and fill positions in the Investigations Bureau traditionally held by Q-35 inspectors with Q-50 Sergeants. Now pending before the Court are (1) plaintiffs' "Motion to Enforce Consent Decree, and (2) plaintiffs' motion to consolidate this 35 year-old action with a recently-filed action, 09-1675 CRB. After carefully considering the papers filed by the parties, and having had the benefit of vigorous oral argument, plaintiffs' motions are DENIED.

## BACKGROUND

**A.**   *The Consent Decree and its Termination*

In 1973, a class of female and minority San Francisco police officers sued the City of San Francisco, the Civil Service Commission, and the San Francisco Police Department ("SFPD") in federal court challenging the Department's hiring and promotion policies. "The complaint charged defendants with having promulgated a widespread pattern and practice of racial and sexual employment discrimination in hiring, promotion, and job assignments, in violation of 42 U.S.C. § 1981 and § 1983, and sections of the United States and California Constitutions." Officers for Justice v. Civil Service Commission, 688 F.2d 615, 618 (9th Cir. 1982).

> In addition to specific allegations of discrimination by the named plaintiffs, the complaint set forth a rather forceful statistical demonstration. The statistics reflected striking differences between the racial and sexual composition of the S.F.P.D. and that of the city. These groups appeared to be vastly underrepresented in the upper ranks of the department. Moreover, minorities and women appeared to be concentrated in certain units, bureaus, and subdivisions in the department, while virtually absent in others. Plaintiffs claimed these discrepancies resulted primarily from the use of unvalidated written examinations and various other class-biased screening and selection devices.

Id. at 618-19. In 1977, the United States filed its own action against the City arising out of the same allegations. The United States' action, 77-2884, was consolidated with the earlier-filed action.

The parties eventually entered into a settlement and a Consent Decree was entered. The district court terminated the Consent Decree pursuant to stipulation in October 1998 ("Termination Stipulation"). Among other things, the Termination Stipulation provided:

> The parties further stipulate that the Q-35 Assistant Inspector examination has been administered and scored. The parties stipulate that the Q-35 examination shall be governed by the terms and procedures of the 1986 Supplemental Order, the Consent Decree and Federal Uniform Guidelines on Employee Selection Procedures and that this court will retain jurisdiction over any remaining issues related to the Q-35 examination as provided under the Consent Decree and Supplemental Order.

Declaration of Michelle Rodriguez in Support of Motion to Enforce Consent Decree ("Rodriquez Decl.") Exh. 5 at 2 (all future references to "Exhibits" are to the exhibits attached to the Rodriquez Decl.).

At the same time the parties stipulated to the termination of the Consent Decree, they entered into a "Stipulation and Order Re: Selection Procedure for the 1998 Q-35 Assistant Inspector Examination" ("the Q-35 Stipulation"). The Q-35 Stipulation provided, in relevant part:

> The City will make a minimum of 175 Assistant Inspector appointments from the eligible list over the life of the list. There will be 135 appointments made together on day one. The appointments will be made in rank order from ranks 1 through 110 and the remaining 25 appointments, as well as any additional future appointments, will be made from a sliding bank that will start at rank 111. The band width is 84 points. All Assistant Inspector appointments will be made in the above manner from the eligible list for a period of four years or until a new eligible list is adopted for that rank.

Exh. 4 at 2.

**B.**     *The Q-50 Sergeants Replace the Q-35 Assistant Inspectors*

In 2005 the SFPD announced a plan to assign Q-50 Sergeants to the Investigations Bureau. As part of the plan, no further appointments would be made to the rank of Q-35 Assistant Inspector. When the last of the Q-35 Assistant Inspectors retired or left the Bureau, the Q-35 rank would no longer exist. Investigative responsibilities would shift to the Q-50 Sergeants who could be moved in and out of the Bureau. However, in 2006 the SFPD appointed 20 individuals off the 1998 Q-35 list to the rank of Q-35 Assistant Inspector and assigned them to the Investigations Bureau. The SFPD has not made any further Q-35 appointments.

According to Police Chief Heather Fong, the change was adopted to streamline the promotional process, minimize examination costs, allow for more regular promotional

3

examinations and thus opportunities for all sworn officers, cross train personnel in all facets of SFPD operations, and provide the SFPD with qualified individuals at each promotional rank.

In 2006 certain officers took a promotional exam for the rank of Q-50 Sergeant, and in August 2007 the SFPD appointed 51 individuals to the Q-50 Sergeant rank.  Pursuant to the plan announced in 2005, the SFPD assigned approximately 31 of the individuals to the Investigations Bureau.

**C.**     *The Civil Service Commission Challenge*

Eligible individuals from the 1998 Q-35 list subsequently appealed to the San Francisco Civil Service Commission ("CSC").  They contended that the SFPD's assignment of Q-50 sergeants to the Investigations Bureau violated CSC rules.

After holding several hearings, the CSC determined that (1) the appointments to the rank of Q-50 Sergeant from the eligible list resulting from the 2006 Q-50 exam were and remain valid; (2) the Department of Human Resources must amend the class specification for Q-50 Sergeant to include full investigative matters; (3) while the amendment to the class specification is pending, the SFPD shall not increase the number of assignments of Q-50 Sergeants to the Investigations Bureau; (4) the assignment of Q-50 Sergeants to work historically performed by Q-35 Assistant Inspectors violated CSC rules, and on that basis the CSC ordered the Department of Human Resources to administer a hybrid examination for Q-35/Q-50 ranks as soon as practicable; and (5) until the adoption of an eligible list resulting from the hybrid examination, the SFPD may make appointments to the rank of Q-35 Assistant Inspector, although it is not required to do so.

**D.**     *The Federal Challenges*

1.     *73-0657*

After the CSC issued its decision, certain plaintiffs from the original class action filed a motion to "Enforce Consent Decree," or, more precisely, to enforce the 1998 Q-35 Stipulation.  Plaintiffs argue that the assignment of Q-50 Sergeants to the Investigations Bureau violates the Stipulation.  They agree with the CSC's determination that the Q-50

4

Sergeants assigned to the Inspections Bureau perform work historically performed by Q-35 Assistant Inspectors and that the Q-50 classification does not encompass such work; however, they object to the remedy imposed by the CSC, namely a new examination. Plaintiffs instead seek an order vacating the assignment of the 31 Q-50 Sergeants to the Investigations Bureau and replacing them with eligibles from the Q-35 list.

2. *09-1675*

Around the same time the "Motion to Enforce Consent Decree" was filed in this action, certain class members from the original action filed a new action in federal court seeking "judicial review" of the CSC's decision. That action–styled as a "Verified Petition for Writ of Mandate to Enforce Federal OFJ Consent Decree"–includes four state law causes of action. The first and third causes of action are for "state law writ of mandate" under California Code of Civil Procedure 1085. Both assert that the Consent Decree requires the CSC and the SFPD to remove the Q-50 Sergeants from the Investigations Bureau and replace them with eligibles from the Q-35 list. The first claim is directed to the CSC while the fourth claim is directed to the Department of Human Resources and the SFPD.

The second and fourth claims for relief also seek a writ of mandate and contend that the CSC violated its own rules, the San Francisco City Charter, and the San Francisco Administrative Code by assigning the Q-50 Sergeants to the Investigations Bureau rather than Q-35 Assistant Investigators. The second claim is directed to the CSC while the fourth claim is directed to the Department of Human Resources and the SFPD.

Plaintiffs contend the Court has jurisdiction of the first and third claims under the "embedded federal question" doctrine and supplemental jurisdiction of the second and fourth claims.

**E.   *The Pending Motions***

Plaintiffs now move for an order enforcing the 1998 Q-35 Stipulation by requiring defendants to vacate the Q-50 Sergeant assignments to the Investigations Bureau and replace those officers with eligibles from the Q-35 list. They have moved in the new case, 09-1675, for essentially the same relief. The hearing on that motion has been vacated pending ruling

5

on the Motion to Enforce in this action. Plaintiffs also move to consolidate the new action with this 35-year old case.

**DISCUSSION**

**A.**     *Motion to Enforce Consent Decree*

"[W]hen a district court incorporates the terms of a settlement agreement or a stipulation into an order, it retains subject matter jurisdiction to interpret and enforce the contents of that order." Nehmer v. U.S. Dept. Of Veterans Affairs, 494 F3d 846, 856 (9th Cir. 2007). Plaintiffs ask the Court to enforce the 1998 Q-35 Stipulation which was incorporated into an order of the court. Basic contract principles apply in interpreting such orders. See Jeff D. v. Andrus, 899 F.2d 753, 759 (9th Cir. 1989) (citing Miller v. Fairchild Indus., 797 F.2d 727, 733 (9th Cir.1986)). "A consent decree, like a contract, must be discerned within its four corners, extrinsic evidence being relevant only to resolve ambiguity in a decree." Nehmner, 494 F.3d at 861.

Plaintiffs rely on the CSC's determination that the Q-50 Sergeants assigned to the Investigations Bureau perform work traditionally performed by Q-35 Assistant Inspectors to argue that the assignment of the Q-50 Sergeants to the Investigations Bureau is, in effect, an appointment of an Assistant Inspector and therefore a violation of the 1998 Q-35 Stipulation; the Stipulation requires that all Assistant Inspector appointments be made from the Q-35 list. The Court does not interpret the Q-35 Stipulation so broadly.

As a preliminary matter, the Court notes that the sentence of the Q-35 Stipulation upon which plaintiffs rely appears to provide that even if plaintiffs are correct, the City is restricted by the Stipulation procedure for only four years. The sentence reads: "All Assistant Inspector appointments will be made in the above manner from the eligible list for a period of four years *or* until a new eligible list is adopted for that rank." Exh. 4 at 2 (Emphasis added). The use of the disjunctive term "or" suggests that the City must comply with one "or" the other, but not both; indeed, the four-year limitation is consistent with the civil service rules which limit the life of an eligible list to four years. Exh. 3 at 4. Thus, the plain meaning of this sentence is that the City must appoint Assistant Inspectors in

6

accordance with the Q-35 Stipulation for at least four years unless a new eligible list is adopted prior to the expiration of the four years.

Without citation to any evidence, plaintiffs nonetheless argue that the parties intended the sentence to mean that the City must follow the appointment procedure set forth in the Q0-35 Stipulation for at least four years *and* until a new eligible list is created; in other words, despite the civil service rules limiting the duration of an eligible list to four years, the 1998 Q-35 eligible list shall remain in effect until a new list is created, and such new list cannot be created for at least four years. This interpretation is contrary to the plain language of the Q-35 Stipulation; if the parties had intended that the appointments be made in accordance with the Stipulation for at least four year *and* until a new list is created, they could have so stated by using the conjunctive term "and" rather than the disjunctive term "or". The CSC, however, concluded that "since all of the parties to the litigation, as a matter of actual practice, interpreted the court's Q-35 order as giving the 1998 list a duration in excess of four years, that list, by the terms of the court's order, continues in force and effect until a new Q-35 eligible list is adopted." Id. at 4.

This Court, of course, is not bound by the CSC's interpretation of the 1998 Q-35 Stipulation. As explained above, a plain reading of the Stipulation suggests that it governs the Q-35 Assistant Inspector appointment procedure for four years, although nothing in it prevents defendants from complying with the procedure for a longer period. Defendants, however, do not address this argument in their opposition; accordingly, the Court's decision on plaintiffs' present motion does not rest on the "four year" limitation in the Q-35 Stipulation.

The Court's decision, instead, is based on the omission in the Stipulation of any language that requires that all vacant positions in the Investigations Bureau be filled by officers of the Q-35 Assistant Inspector rank. Nor does any language of the Q-35 Stipulation require that assignments traditionally performed by Q-35 Assistant Inspectors must always be assigned to Q-35 Assistant Inspectors. The Court understands that such assignments may violate the civil service rules, the City Charter and the City's Administrative Code, but the

7

Stipulation--which is entitled "Selection Procedure for the 1998 Q-35 Assistant Inspector Examination"--does not limit the City's ability to make such assignments. Much more clear and direct language is required before this *federal* court will interpret an eleven-year old stipulation as requiring the court to direct the Chief of Police to reassign police officers from their current duties and appoint other officers to those same duties. As the CSC noted, requiring the SFPD to vacate the current assignments of the Q-50 Sergeants to the Investigations Bureau would have an "effect upon the Police Department's investigative activities should the Q-50 Sergeants who are now conducting investigations of serious crimes suddenly be taken off those investigations and transferred out of the bureau. As members of the department's command staff . . . insisted in testimony before [the CSC], the effect would be disruptive, and public safety would be jeopardized." Exh. 3 at 5.

Nor does the Termination Stipulation give this federal court jurisdiction to review whether the assignment of the Q-50 Sergeants to perform work traditionally performed by Q-35 Assistant Inspectors violates the civil service rules, City Charter and Administrative Code. The Termination Stipulation provides that the district court will "retain jurisdiction over any remaining issues related to the Q-35 examination as provided under the Consent Decree and Supplemental Order." It states further that "any disputes arising from the administration of any examination under the Consent Decree shall remain under the jurisdiction of this court in accordance with the terms and procedures of the Consent Decree and Supplemental Order." Plaintiffs here are not challenging the 1998 Q-35 *examination* as not complying with the Consent Decree or Supplemental Order, and by this motion they are not challenging the hybrid Q-35/Q-50 examination recently ordered by the CSC (although the Court expresses no opinion as to whether it would have jurisdiction of such a challenge). They are not challenging any examination at all; instead, they are challenging the SFPD's decision to assign Q-50 Sergeants to the Investigations Bureau instead of eligibles from the Q-35 Assistant Inspector list. Such challenge is beyond the jurisdiction retained in the Termination Stipulation.

Plaintiffs' complaint that such a narrow reading of the Stipulations enables defendants

8

to avoid their obligations to make Assistant Inspector appointments from the 1998 Q-35 list is not well taken. The 1998 Q-35 Stipulation requires the City to appoint a minimum of 175 Assistant Inspectors from the 1998 Q-35 examination list and the City has fully complied with that requirement: it has appointed at least 229 Assistant Inspectors from that list.

As plaintiffs have not met their burden of demonstrating a violation of the orders of the district court, plaintiffs' Motion to Enforce is DENIED.

**B.**     *Motion to Consolidate or for Leave to Amend*

Plaintiffs also move to consolidate the new case, 09-1675 CRB, with this case, 73-657; in the alternative, they seek leave to amend the complaint in 73-657 to include the claims asserted in 09-1675 CRB. The motion is DENIED without prejudice. There is a serious question as to whether this federal district court has subject matter jurisdiction of the state law claims in the new complaint, 09-1675, especially in light of the Court's interpretation of the 1998 Q-35 Stipulation. Accordingly, the Court will first determine its jurisdiction of the new action before deciding whether to consolidate. Moreover, in light of the Court's ruling today, plaintiffs may now prefer to pursue their state law claims in state court.

**CONCLUSION**

For the reasons explained above, plaintiffs' "Motion to Enforce Consent Decree" is DENIED. Plaintiffs' objection to the first sentence of the thirteenth paragraph of Chief Fong's declaration (and to defendants' reference to the sentence in their opposition) is SUSTAINED and defendants' objections to plaintiffs' evidence are OVERRULED.

Plaintiffs' motion to consolidate is DENIED without prejudice.

On or before June 18, 2009, the parties shall submit to the Court a stipulation as to how the Court should proceed on the pending motions in the related case, 09-1675 CRB. If the parties cannot reach agreement, they shall appear for a case management conference at

9

8:30 a.m. on June 19, 2009.

**IT IS SO ORDERED.**

Dated: June 4, 2009



CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE

**United States District Court**
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14   G:\CRBALL\73-83\73-0657\orderdenyingmotions.wpd
15
16
17
18
19
20
21
22
23
24
25
26
27
28